UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL NOLAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-CV-11645 |
| | ) | |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| CITY OF CHICAGO and GEORGE BLACK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

According to his complaint, the City of Chicago ("the City") hired Michael Nolan ("Nolan") to work as a sign hanger in its Department of Transportation ("CDOT") on or around October 16, 2014. (ECF No. 1 ¶ 7.) The City terminated him approximately three months later. (*See id.* ¶ 23.) On December 24, 2015, Nolan filed a four-count complaint against the City and one of his supervisors, George Black ("Black"), in his individual capacity. (*See id.* ¶¶ 5–6, 15.) He pleads a claim under 42 U.S.C. § 1981 against both defendants (Count One); a retaliation claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, against the City (Count Two); a Title VII discrimination claimed premised on a hostile work environment against the City (Count Three); and a respondeat superior count against the City (Count Four). (*See id.* at 3–7.) The court has before it separate motions to dismiss Nolan's complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), filed by the City and Black. The court grants both motions but gives Nolan leave to amend his complaint in part, concluding that his hostile work environment claim exceeds the scope of his charge of discrimination.

## I. BACKGROUND

For purposes of deciding a Rule 12(b)(6) motion, the court assumes that all of the well-pleaded allegations in the complaint are true and draws all reasonable inferences in the plaintiff's

1

favor. *Manistee Apts., LLC v. City of Chi.*, 844 F.3d 630, 633 (7th Cir. 2016). Nolan alleges that he began experiencing workplace harassment "[a]lmost immediately after being hired." (Compl. ¶ 8.) Coworkers and supervisors yelled and cursed at him, verbally abused him, threatened to terminate him "because of his 'attitude,'" (Compl. ¶ 12) and gave him disparate work assignments during training. (*Id.* ¶¶ 9–10.) He describes one occasion in his complaint on which Black "poked Plaintiff in the chest repeatedly and told [him] that the safety of the building and the people in it were none of [his] business." (*Id.* ¶ 11.)

Black and Nolan's supervisors scheduled his performance review in December 2014, even though four months remained on Nolan's probationary period. (*Id.* ¶¶ 14–15.) At the review, Black told Nolan that he did not have a problem with Nolan's performance, but "Nolan had a problem with 'body language.'" (*Id.* ¶ 16.) Due to the mounting stress, Nolan began calling in sick. (*Id.* ¶ 21.) On January 5, 2015, Nolan called CDOT's human resources division and "explained . . . the problems he had been having with Defendant Black and other members of CDOT." (*Id.* ¶ 22.) Nolan received a termination letter on or about January 15, 2015; it did not give a reason for his termination. (*Id.* ¶ 23.) Nolan filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 15, 2015, and the EEOC sent him a right-to-sue letter on September 25, 2015. (*Id.* ¶ 24.)

Nolan commenced this action by filing his original complaint on December 24, 2015. He initially served the City but not Black. By April 2016, the City's motion to dismiss had been fully briefed. Nolan withdrew two counts in his response to the City's motion to dismiss (ECF No. 17 at 1–2 (withdrawing Counts One and Four as to the City)), but he did not amend his complaint. *See* Fed. R. Civ. P. 15(a)(1)(B).

In June 2016, Nolan moved for an extension of his deadline to serve Black. (ECF No. 19.) His motion stated, among other things, that "[u]pon reading Defendant's motion, Plaintiff realized that the complaint would need to be amended, and for the sake of efficiency, waited to serve Defendant Black until Defendant City's motion had been decided." (*Id*. ¶ 5.) The court held a hearing on June 24, 2016. The court asked Nolan's counsel whether he intended to amend his complaint consistent with the representations made in his response to the City's motion to dismiss. (*See* Tr. at 6:7–7:4, ECF No. 26-2 Ex. 5.) Nolan's counsel responded that he did not "purely for judicial economy because we are standing on Counts 2 and 3 against the City." (*Id*. at 7:5-7.) After hearing from Nolan's counsel on his theory of how the interest of judicial economy was served, the court stated:

> I do not think there is any judicial economy here. Basically, what you are telling me is if I read your response, I will know what is at issue. It has been put at issue by the City. And I will go ahead and get you a decision on it. That is what you want?
>
> MR. O'BRIEN [Counsel for Nolan]: Yes, your Honor.

(*Id*. at 7:21–8:1.) The court set a deadline for Nolan to serve Black, and Black filed his pending motion to dismiss.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)); *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Tombly*, *supra*). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Atkins v. City of Chi.,* 631 F.3d 823, 832 (7th Cir. 2011) ("[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a

probability as such terms as 'preponderance of the evidence' connote."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Katz-Crank*, 843 F.3d at 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. ANALYSIS OF MOTIONS TO DISMISS

### A. Section 1981 and Respondeat Superior Claims

Both defendants argue that Nolan has failed to allege an actionable § 1981 claim in Count One of his complaint, and the City also contends that Count Four's respondeat superior allegations must be dismissed. Affirming a Rule 12(b)(6) dismissal, the Seventh Circuit held in *Campbell v. Forest Preserve District of Cook County* that § 1981 "does not create a private right of action against state actors." 754 F.3d 652, 671 (7th Cir. 2014). Thus, Nolan cannot sue the City under § 1981 "because § 1983 provides the exclusive federal damages remedy for § 1981 claims against state actors." *Gomez v. City of Chi.*, No. 16 C 7743, 2017 WL 131565, at *4 (N.D. Ill. Jan. 13, 2017) (quoting *Waters v. City of Chi.*, 580 F.3d 575, 580 (7th Cir. 2009)). For the same reason, "municipalities may not be held liable for employees' violations of § 1981 and § 1983 under a *respondeat superior* theory." *Id.* (citing *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014)).

In his response to the City's motion to dismiss, Nolan concedes these points and withdraws Count One as to the City and Count Four. (*See* Resp. to City Mot. to Dismiss 1–2,

4

ECF No. 17 ("Plaintiff will concede that Count I is not applicable to Defendant City").) He makes the same concession about his § 1981 claim as to Black, but he seeks leave to plead a § 42 U.S.C. 1983 claim against Black (ECF No. 31 at 3; *see also* Compl. ¶ 5 (alleging the City employed Black and that he "engaged in the conduct complained of in the course and scope of his employment and under color of law")). The court addresses leave to amend below. Because Nolan has withdrawn Counts One and Four, the court dismisses them. *See, e.g.*, *Villarreal v. Arnold*, No. 16 CV 00603, 2016 WL 7374272, at *1 (N.D. Ill. Dec. 20, 2016) (not reaching motion to dismiss claim for intentional infliction of emotional distress because "In her response brief, [plaintiff] says she intends to withdraw the intentional infliction of emotional distress claim. That claim is therefore voluntarily dismissed without prejudice"); *Kenya v. Kane Cnty.*, No. 16 C 4979, 2016 WL 7187264, at *2 (N.D. Ill. Dec. 12, 2016) (granting motion to dismiss respondeat superior allegations because "[t]he [plaintiffs] concede this point in their response and withdraw this claim").

**B. Title VII Claims**

The City also moves to dismiss Nolan's Title VII retaliation and hostile work environment claims. Nolan's failure to plead conduct based on a protected category in his complaint requires dismissal of both counts. Additionally, Nolan did not exhaust his hostile work environment claim by linking the alleged harassment he experienced to his membership in a protected category in his charge of discrimination filed with the EEOC.

To state a Title VII retaliation claim, Nolan must plausibly allege that "he engaged in protected activity and suffered an adverse employment action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015)). Not all workplace complaints

5

amount to protected activity under Title VII; a Title VII plaintiff has to show that he made "more than simply a complaint about some situation at work, no matter how valid the complaint might be." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016); *see also Lord*, 839 F.3d at 563. To survive a Rule 12(b)(6) motion, then, a Title VII plaintiff must establish that he "opposed conduct prohibited by Title VII, or at a minimum . . . 'reasonabl[y] belie[ved]'" he was. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997) (quoting *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994)); *accord. Castro*, 786 F.3d at 564 (holding employees who complained to human resources personnel that coworkers "often used racially and ethnically derogatory language in the workplace" engaged in protected activity even if comments were not themselves Title VII violations because they "sincerely and reasonably believed they were complaining about conduct prohibited by Title VII, which is all that is required to establish protected activity"). To plead a Title VII retaliation claim, then, the complaint must "indicate[] 'the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.'" *Cole*, 838 F.3d at 901 (quoting *Orton–Bell v. Indiana*, 759 F.3d 768, 776 n.6 (7th Cir. 2014)) (alteration omitted).

Even viewed in the light most favorable to him, Nolan's complaint does not plead facts connecting his harassment complaint to a protected category under Title VII. Nolan pleads that the harassment he experienced included: "cursing, yelling, and other verbal abuse; disparate treatment during his training; intimidation; and threats to stay away from the union steward" (Compl. ¶ 9); that Black threatened him and poked him the chest on one occasion (Compl. ¶ 11); that he was threatened with termination due to his attitude (Compl. ¶ 12); and that Black made it

apparent to Nolan that he was looking for a reason to fire him at a meeting (Compl. ¶ 17). Regarding reporting all of this, Nolan's complaint states that he "explained to human resources the problems he had been having with Defendant Black and other members of CDOT." (Compl. ¶ 22.) Nowhere in Nolan's complaint does he allege his own race, sex, religion, or national origin or those of Black or the other CDOT personnel. Nor does the complaint state that he communicated a belief that his treatment was linked to protected-category discrimination, either directly or inferentially, when he complained to CDOT's human resources department. (*See* Compl. ¶ 22.) That is, the well-pleaded facts in the complaint plausibly allege at most a complaint of workplace "harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference." *Cole*, 838 F.3d at 901 (quoting *Orton–Bell*, 759 F.3d at 776 n.6) (affirming dismissal of Title VII retaliation claim because "allegations of incorrect pay, employees' supervision of their own children, commodity orders under his name, improper use of university supplies, the break-in at his office, the scrap metal incident, and unjustified police surveillance" were not so overtly or implicitly connected to race as to sustain retaliation claim); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006) (affirming grant of summary judgment on retaliation claim where record showed that employee "spoke with the City regarding 'issues of harassment'" but the employee did not "point to any evidence that in complaining to the City he indicated the alleged harassment was based upon his sex or was sexual harassment"); *Gleason*, 118 F.3d at 1147 (holding generalized complaints about management style insufficient to sustain retaliation claim).

The same inadequacies also render Nolan's pleading of Title VII discrimination through a hostile work environment claim in Count Three insufficient. Title VII prohibits an employer from discriminating against an employee based on the "individual's race, color, religion, sex, or

7

national origin." 42 U.S.C. 2000e-2(a)(1). A race discrimination claim based on hostile work environment under Title VII has the following elements: "(1) [the plaintiff] was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Cole*, 838 F.3d at 895-96 (citing *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 634 (7th Cir. 2009)). As just explained, Nolan's complaint contains allegations of harassment at the hands of CDOT employees, but it does not allege facts from which the inference that the harassment was based on Nolan's membership in a protected category can be drawn. *See Cole*, 838 F.3d at 897 (finding "almost no evidence of racial animus in the record: no hostile or ambiguous remarks, no racial slurs" when affirming summary judgment for employee on hostile environment claim); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345–46 (7th Cir. 1999) (holding that manager's use of coarse language, door slamming, and cutting employee off in the parking lot were not inherently race-based on that record). Consequently, Nolan's complaint fails to allege an actionable Title VII claim in Count Three.

**C. Exhaustion and Scope of the Charge**

Before filing suit, a Title VII plaintiff like Nolan must file a charge with the EEOC and receive a right-to-sue letter. *See* 42 U.S.C. § 2000e-5; *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush*, 966 F.2d at 1110 (explaining that this rule accords with the "principle of primary jurisdiction in the agency"). Title VII's charge requirement serves two primary purposes: "it gives the EEOC and the employer a chance to settle the dispute, and it gives the

8

employer notice of the employee's grievances." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015) (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). Hence, a Title VII claim falls within the charge's scope so long as "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. At a minimum, the charge and the complaint must both "describe the same conduct and implicate the same individuals." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) (quoting *Cheek*, 31 F.3d at 501). Nevertheless, the scope of an EEOC charge should be reviewed liberally. *Huri*, 804 F.3d at 831 (citing *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005)); *see also Rush*, 966 F.2d at 1111 (describing the scope of construction as a "lenient standard").

The City argues that Nolan failed to exhaust his hostile work environment claim in his EEOC charge for two, related reasons.[1] First, Nolan checked only the box for retaliation. (ECF No. 15-1 Ex. 3 at 1.) Second, the charge's narrative says that Nolan was harassed, but it does not connect the harassment to a protected characteristic.

Nolan checked the wrong box, but "[t]he failure to check a box on an EEOC charge in and of itself is not sufficient to make a determination as to whether a claim is like or reasonably related to the charge." *Howell v. Rush Copley Med. Grp. NFP*, No. 11 C 2689, 2012 WL

---

[1] The court can consider the charge at the Rule 12(b)(6) stage without turning the instant motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Nolan did not attach his EEOC charge to his complaint, but the City attached an alleged copy to its motion to dismiss. (ECF No. 15-1 Ex. 3.) "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Nolan refers to his EEOC charging document in his complaint (ECF No. 1 ¶ 24), and he does not dispute the authenticity of the copy in the record. The court may therefore consider it without converting the City's Rule 12(b)(6) motion to a motion for summary judgment. *See, e.g.*, *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015) (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) and *Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994)) (considering charge attached to motion to dismiss where the plaintiff referred to charge in the complaint because "[t]he charge is also central to determining the proper scope of Flores's claims").

832830, at *3 (N.D. Ill. Mar. 12, 2012) (citing *Moore*, 641 F.3d at 256-57); *see also Moore*, 641 F.3d at 257 (citing *Cheek*, 31 F.3d at 500–01) (finding fact that employee checked boxes for discrimination based on protected categories did not, by itself, bring discriminatory discharge claims within the charge's scope); *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 169 (7th Cir. 1976) (en banc) (holding sex discrimination claim fell within scope of charge's narrative even though the plaintiff did not check the box for sex discrimination). The preprinted charge form Nolan completed has check boxes for "discrimination based on" each of the Title VII protected categories and "retaliation," but it has no checkbox for hostile work environment. (*See* ECF No. 15-1 Ex. 3 at 1.) Nor does the form in the record include instructions. (*See id.*) A Title VII hostile environment claim is a discrimination claim based on the plaintiff's membership in a protected category, but in contrast to discrete acts of discrimination like termination, failure to promote, refusal to hire, or denial of a transfer, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)); *see also id*. at 115–17 (elaborating on differences between discrete acts and hostile environment claims and making clear that both are grounded in Title VII's prohibition of discrimination in the "terms, conditions, or privileges of employment . . . because of [an] individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e–2(a)). Nothing on the form tells a person untrained in the law that checking only the retaliation box risks losing a hostile environment claim premised on the conduct about which the employee complained. (*See id*.); *see also Butler v. Na'tl R.R. Passenger Corp.*, 936 F. Supp. 2d 920, 92728 (N.D. Ill. 2013) (quoting *Brindley v. Target Corp.*, 761 F. Supp. 2d 801, 807 (N.D. Ill. 2011)) ("[I]t is noteworthy that there is no separate box on the EEOC form for hostile work environment claims (contrast the

10

separate box provided for retaliation claims). It would surely be reasonable (and indeed logical) for a lay plaintiff to check the general discrimination box when seeking to advance a hostile work environment claim.") (alteration in original). Accordingly, Nolan's failure to check a box corresponding to a protected category does not prove fatal to his hostile work environment claim.

Next, the City argues Nolan's narrative is too general to alert it to his hostile work environment claim because it does not link the alleged harassment a protected characteristic. (Mem. Supp. Mot. Dismiss 15, ECF No. 15.) The narrative in the charge reads:

> I was hired by Respondent on or around October 16, 2014. My most recent position was Sign Hanger. During my employment, I was continually harassed. I complained to Human Resources of the harassment. Subsequently, I was discharged.
>
> I believe I have been retaliated against, in violation of the Title VII of the Civil Rights Act of 1964, as amended.

(ECF No. 15-1 Ex. 3 at 1.) Nolan's harassment allegations preserved a freestanding claim that he was subject to a hostile work environment. In *Huri*, *supra*, the Seventh Circuit held that a narrative stating that the employee believed she was discriminated against based on a protected category and alleging "harassment" preserved the plaintiff's hostile work environment claim. 804 F.3d at 832. The City cites a case applying the general rule that the charge must specify each act of discrimination separately. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010). In *Jones*, the charge included an allegation of "a pattern of discrimination by [the defendant] and its agents." *Id*. That language did not encompass a specific instance of discrimination not otherwise present in the charge, the Seventh Circuit held, because "[a]ny additional alleged act of discrimination can always be fit in and become part of an overall general pattern of discrimination." *Id*. "In the context of Title VII cases, the word 'harassment' frequently describes the conduct that defines the phrase 'hostile work environment.'" *Huri*, 804 F.3d at 832 (quoting the definition of

11

"harassment" in *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1032–33 (7th Cir. 2003) as "a broad term which encompasses all forms of conduct that unreasonably interfere with an individual's work performance or create an intimidating, hostile, or offensive working environment") (other citation omitted). Like the charge in *Huri*, Nolan's charge states that he was "continually harassed" after describing when he was hired and what he did. So it preserves the freestanding claim that a hostile work environment existed.

The problem with Nolan's charge is that, unlike the charge in *Huri*, Nolan did not link the harassment to a protected characteristic.[2] *See id.* (holding that because plaintiff "inclu[ded] . . . nationality- and religion-based harassment in . . . her first EEOC charge, her employers had no reason to be surprised by her Title VII hostile work environment allegations"). In material respects, Nolan's charge is the same as the plaintiff's charge in *Sitar v. Indiana Department of Transportation* (in which the plaintiff also checked only the retaliation box):

> On March 27, 1998, I was terminated from my position of Maintenance Worker III. Ray Baker told me that I was being terminated because I was a probationary employee and because I couldn't get along with the Westfield crew. The State Affirmative Action Office had completed an investigation of possible sex discrimination against me by him on March 10, 1998, of which he received a summary. I believe that I have been retaliated against for participating in the EEO process, in violation of Title VII of the Civil Rights Act of 1964, as amended.

344 F.3d 720, 726 (7th Cir. 2003). The Seventh Circuit in *Sitar* held that the plaintiff's charge did not preserve her hostile environment claim because "[n]ormally, retaliation, sex discrimination, and . . . harassment charges are not 'like or reasonably related' to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Id.*

---

[2] With the exception of explicit references to protected categories, the charge in *Huri* gave no more detail than did Nolan's: "I was hired by Respondent on June 5, 2000. My current position is Childcare Attendant. During my employment, I have been subjected to harassment because of my religion and national origin. I filed internal complaints, however, the harassment continued." *Huri*, 804 F.3d at 830 (quoting the plaintiff's first charge of discrimination).

12

at 726 (citing *Cheek*, 30 F.3d at 501). The *Sitar* court added that unlisted claims and a retaliation claim alleged in the charge may be "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Id*. (quoting *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993)). But it held that exception did not apply. *See id*. at 726-27. The *Sitar* court's reasoning applies equally in the case at hand: Nolan's retaliation and harassment claims pleaded in his complaint "involve a separate set of incidents, conduct, and people, spanning over a period of time prior to the filing of [the] complaint and more than three months prior to [the plaintiff's] termination." *Id*.

Nolan cites no contrary authority in his response to the City's motion to dismiss. Under *Sitar* and cases like it, Nolan cannot bring the hostile work environment claim pleaded in Count Three because his charge does not contain any allegations linking the alleged harassment to a protected characteristic. *See id*. at 726-27; *Butler v. Na'tl R.R. Passenger Corp.*, 936 F. Supp. 2d 920, 927 (N.D. Ill. 2013) (holding charge preserved hostile work environment claim where it specifically alleged discrimination based on race and that employee "was disciplined because of his race; subjected to unequal terms and conditions of employment; and denied overtime opportunities").

**IV. LEAVE TO AMEND**

Nolan requests leave to amend portions of his complaint in his responses to both pending motions. Federal Rule of Civil Procedure 15(a)(2) requires leave of court to amend a complaint, absent the written consent of the opposing party. The rule directs district courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The Supreme Court has interpreted [Rule 15] to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc. v. Sec.*

*Life of Denver Ins. Co.*, 800 F.3d 343, 357–58 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Nolan chose to stand on his complaint rather than amend it as a matter of course as Rule 15(a)(1)(B) entitled him to do, and he chose to stand on Counts Two and Three at the June 24, 2016, hearing (*See* Tr. at 7:5-8). Nevertheless, "a plaintiff who receives a Rule 12(b)(6) motion and who has good reason to think the complaint is sufficient may also choose to stand on the complaint and insist on a decision without losing the benefit of the well-established liberal standard for amendment with leave of court under Rule 15(a)(2)." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 523 (7th Cir. 2015) (rejecting argument that 2009 amendment to Rule 15 altered the standard for amendment when a plaintiff stands on the complaint in response to a Rule 12(b)(6) motion and reasoning that "[t]he need for a liberal amendment standard remains in the face of uncertain pleading standards after *Twombly* and *Iqbal*"). Consequently, the court analyzes Nolan's request under Rule 15(a)(2).

Giving Nolan leave to amend some counts to replead the same legal theories would be futile. As Nolan's withdrawal of Counts One and Four as to the City suggests, granting Nolan leave to amend Count One to replead a § 1981 claim would be futile under *Campbell*, *supra*, because both defendants are state actors. For the same reason, repleading a respondeat superior theory against the City, as alleged in Count Four, would serve no useful purpose. *Campbell*'s holding means that those claims would not survive a Rule 12(b)(6) motion, which is the test of futility here. *See Runnion*, 686 F.3d at 524 ("[W]hen the basis for denial is futility, we apply the legal sufficiency standard of Rule 12(b)(6) to determine whether the proposed amended complaint fails to state a claim." (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997))). Under the same standard, allowing Nolan to replead his

hostile work environment claim in Count Three would be futile because that claim is unexhausted due to his failure to invoke a protected category in his charge.

The court will give Nolan an opportunity to replead his claim against Black, if he can, though not under § 1981. Black argues that Nolan unduly delayed by standing on his complaint at the hearing on his motion to extend his deadline to serve Black, but he identifies no prejudice flowing from that delay. Delay by itself does not ordinarily justify denying leave to amend absent prejudice or another aggravating factor. *See Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016) ("With a late motion for leave to amend, the 'underlying concern is the prejudice to the defendant rather than simple passage of time.'" (quoting *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014))); *Life Plans*, 800 F.3d at 358 ("[D]elay by itself is normally an insufficient reason to deny a motion for leave to amend. Delay must be coupled with some other reason ... [t]ypically ... prejudice to the non-moving party." (quoting *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004))) (alterations in original). Nolan had not served Black when the court held its hearing on June 24, 2016, and he withdrew Count One only as to the City in his response to its motion to dismiss (*See* ECF No. 17 at 2). Black subsequently moved to dismiss Count One for the same reason the City moved to dismiss it—Nolan alleged that Black was a state actor. But that does not mean Black suffered unfair prejudice from the delay because Nolan could not be sure in June 2016 that Black would later take the same position as the City, especially given that Nolan sued Black in his individual capacity. While Nolan may have delayed serving Black without articulating a particularly good reason, Black has not shown that Nolan's delay in serving him prejudiced him. *See McCoy*, 760 F.3d at 687 (affirming grant of leave to amend absent prejudice

even though "the unexplained delay looks more like procedural gamesmanship than legitimate ignorance or oversight").

## V. CONCLUSION

For the reasons given above, defendants' motions to dismiss (ECF Nos. 13, 25) are granted in part and denied in part. Nolan's complaint (ECF No. 1) is dismissed. The court grants Nolan limited leave to amend his complaint by and including February 24, 2017, as follows: (1) Nolan may not reallege a § 1981 claim as pleaded in Count One, but he may attempt to plead a claim against Black under another legal theory; (2) Nolan may amend his Title VII retaliation claim against the City pleaded in Count Two only; (3) Nolan may not amend Count Three because his failure to complain to the agency of discrimination based on his membership in a protected category renders any amendment futile; and (4) Nolan may not replead the respondeat superior allegations against the City in Count Four. Failure to file an amended complaint by the deadline set in this order will result in the entry of a judgment dismissing this action with prejudice. A status conference is set for March 1, 2017, at 9:30 a.m.


Date:  February 10, 2017                          /s/
                                            Joan B. Gottschall
                                            United States District Judge